# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>DARRIN M. BLAIS,<br><br>              Debtor<br><br>CHARLES MARGIS,<br><br>              Plaintiff<br><br>v.<br><br>DARRIN M. BLAIS,<br><br>              Defendant | Chapter 7<br>Case No. 14-13292-FJB<br><br><br><br>Adversary Proceeding<br>No. 14-1206 |

## MEMORANDUM OF DECISION

Plaintiff Charles Margis ("Margis") bought a house for himself and his family in North Dartmouth, Massachusetts (the "Property"). The Property needed extensive renovation. Margis, a trained pharmacist, is also handy. He and his father decided to do much of the renovation themselves, but they needed help on certain aspects of the project. In need of a drywall contractor, Margis looked in the local yellow pages and found the chapter 7 debtor, Darrin Blais ("Blais"). Margis hired Blais to do finish work on his walls, especially the taping. The parties agreed on a price of $5,300, of which Margis, in three installments, ultimately paid $3,500 to Blais. According to Margis, Blais showed up once, did about five linear feet of taping, and never returned. Nor did he return any of the money he was paid. Blais responds that it was Margis who breached the contract by failing to complete his part of the preparation work. Margis sued Blais in state court and received a judgment and a supplementary process order requiring Blais to pay monthly on the judgment. Blais defaulted and then filed a petition for relief under chapter 7 of the Bankruptcy Code.

In the bankruptcy case thereby commenced, Margis filed an adversary complaint against Blais in which he objected under 11 U.S.C. § 727(a)(4)(A) to Blais's receipt of a discharge and, in the alternative, sought a determination under 11 U.S.C. § 523(a)(2)(A) that his state court judgment against Blais is excepted from discharge. After a trial that included the admission of several exhibits and the testimony of four witnesses, I find that Margis has failed to carry his burden of establishing that Blais is not entitled to a discharge, but also that Margis has established by a preponderance of the evidence that his judgment debt to Margis is a debt for money that was obtained by a false representation and, as such, is excepted from discharge under § 523(a)(2)(A).

**PROCEDURAL HISTORY**

Margis asserted two counts in his complaint. In the first, he sought a determination that his judgment is excepted from discharge under 11 U.S.C. § 523(a)(2), (4), and (6). At trial, however, he indicated that he was proceeding under subsection (a)(2) alone—specifically, subsection (a)(2)(A)—and thus abandoned any claim for relief under subsections (a)(4) or (a)(6). As the gravamen of his count under § 523(a)(2)(A), the complaint specified that Margis's repeated promises as to when the work would be completed were false and intended to secure the first and two subsequent payments from Margis, that relying on these false promises, Margis advanced three payments totaling $3,500 to Blais, and that Blais never performed the promised work.

In the second count, Margis objected to Blais's receipt of a discharge under 11 U.S.C. § 727. Though the complaint did not identify the specific subsection of § 727 on which he was relying, his stated basis for relief—"numerous misrepresentations" in his bankruptcy schedules and statement of financial affairs, each constituting "a false oath"—made clear that he was proceeding under § 727(a)(4)(A) (requiring denial of discharge when a debtor "knowingly and fraudulently, in or in connection with the bankruptcy case, made a false oath or account"). Though the statutory basis was clear, Margis did not specify in his complaint, or at any time before trial, the precise misrepresentations

2

that constituted the alleged false oath or oaths. The complaint stated only that Blais's alleged misrepresentations "included his income, his expenses, his past income, transfer of assets, and his continued business operations."

Blais answered and filed a counterclaim for breach of contract but later voluntarily dismissed the counterclaim. His answer includes a demand for attorney's fees under 11 U.S.C. § 523(d).

After a trial of the complaint, the parties submitted proposed findings and conclusions and the court heard closing arguments. The following constitute my findings of fact and conclusions of law.

**FINDINGS OF FACT**

    a.    **The Drywall Taping Contract**

Margis purchased the Property at a foreclosure auction, knowing that it would require renovations. He and his family lived with his parents while he undertook the renovations. He did much of the work himself and hired contractors for the balance. When it came to the drywall work, he decided to hire a contractor to do taping. He interviewed several and selected Blais, whose proposed price was "somewhere in the middle." On March 17, 2008, Blais did a walkthrough of the Property with Margis and his father. On April 28, 2008, the parties signed a rudimentary written contract that Blais had prepared. The contract was on the letterhead of Hung Rite Drywall ("Hung Rite"), Blais's business. It is unclear whether Hung Rite is a corporation or simply a sole proprietorship, the name under which Blais plied his trade, a d/b/a. The address and phone number for Hung Rite were Blais's home address and home phone number.

The contract did little more than provide a description of the scope of the work. It said as follows: "Prep all preexisting sheets. Replace any corner beads that are damaged. Tape 1st and 2nd floors, material and labor included. Owner responsible for dumpster on site, or all trash removal. All rooms that are ready to prep must be cleared of all debris. Owner must supply electricity, (sic) and water to the house." The contract went on to state the financial terms. It gave a quote of $5,300 for the

job, with a deposit of $2,000 due upon signing, an additional payment of $2,000 due 14 days after signing the contract, and $1,300 due upon completion. Blais also added, "Owner takes full responsibility for any court costs due to non-payment." Although the contract is silent on this point, Blais insisted at trial that the deal was that Margis would remove all existing tape so that Blais could proceed with his work. Blais says that the old tape was never removed. Margis testified that he had removed all of the existing tape "months before," so the Property was ready for the new taping work from the moment Blais was hired. More on that factual dispute later.

The conversations between the parties regarding the timing of the job and payments are disputed. Margis claims that Blais told him on March 17, 2008 that the job would take a week to complete. Blais denies this, saying that it is his policy and practice never to tell a customer a time to complete. The contract is silent on start date and time to complete.

On April 28, 2008, when the parties signed the contract, Margis paid Blais the $2,000 deposit that the contract called for. The next day, Blais went to the Property to begin work. Blais says that when he arrived, he saw that very little of the old tape had been removed. He testified that it was Margis's responsibility to remove all of the old tape so that he could do his work. Still, Blais claims that on April 29, 2008, he removed the old tape in the "first room off of the garage" himself and proceeded to do all the taping in that room. According to Blais, he tried to reach Margis on that day to get him to come to the Property to remove additional old tape so that he could continue, but he could not reach Margis, and Margis never returned to the Property to remove the old tape. Blais says he left the Property, unable to proceed. Margis disputes this story. He testified that the first room off of the garage was fully ready for Blais to do his work on April 29, 2008, and that Blais did only a four or five foot long taping that day, not the whole room. He says that all of the old tape had been removed long before he even met Blais. And at trial, Margis supported this testimony with a series of photographs, all electronically

4

imprinted with the date May 15, 2008.[1] Margis testified that he took the photographs on May 15, 2008, sixteen days after, according to Blais's testimony, Blais had retaped the entire room. From one photograph that shows the first room off of the garage, it appears that the old tape was fully removed but also that, contrary to Blais's testimony, new tape had not been applied. This is a pivotal fact in my determination of this case. On the basis of this photograph, I find that Blais's testimony—that he had completed the taping of that room—was false.

I find Margis's testimony more credible. During his case in chief, Margis never mentioned anything about the alleged need for him to remove tape before Blais could get to work. Indeed, that alleged precondition to performance was not mentioned in the contract at all, even though other responsibilities of the homeowner were mentioned—removal of trash and provision of water and electricity. Neither party testified that they had discussed the need for Margis to remove the old tape during their walk through. Only when Blais testified did he finally raise this cornerstone of his defense. In rebuttal, Margis testified that all of the old tape had been removed long before he even met Blais.

It is uncontested that Margis made a series of payments to Blais. On April 28, 2008, the date the contract was signed, it is undisputed that Margis paid Blais the $2,000 deposit in cash. Margis says that Blais insisted that the deposit be paid in cash, and Blais counters that it was Margis who insisted on paying cash because he wanted Blais to start the work immediately and not wait for a personal check to clear. As noted above, it is uncontested that Blais went to the Property the next day and did some work. After that first day, Blais never returned to do additional work.  Nor, until May 12, 2008, did he answer Margis's telephone calls. On May 12, 2008, when the next $2,000 payment was due, Blais answered Margis's call and told him that the contract required another $2,000 payment. Margis noted that no

---

[1] Blais objected to admission of the photographs, which he claims he had not seen before and were not listed on Margis's pretrial statement, arguing that they were called for in discovery but not produced. After a voir dire on the topic, I concluded that the photographs had not been requested in discovery and were properly offered as rebuttal evidence.  Because they were used only in rebuttal, they were not subject to the requirement (in the Court's pretrial order) that they be listed in the pretrial statement.

work had been done, and Blais retorted that the agreement did not say that any work needed to be done by that time. Blais also told Margis that he needed the next installment in order to pay his workers—this was false, as Blais later testified that he had not had employees since 2006—and he promised that if he got the next installment he would get in there the next day to continue the job. In reliance on this representation and to get the work moving, Margis gave Blais an additional $1,000 on May 12, 2008. Still Blais failed to appear, and Margis again tried to reach him by phone. On May 27, 2008, Margis reached Blais. Blais again said that he needed more money to pay his workers. So Margis offered to pay another $500 "if you agree to pick it up while you are actually on the property doing work." Blais agreed, so Margis taped a $500 check to a wall at the Property, and Blais indeed returned, but all he did was take the check and leave, doing no additional work. Blais cashed the $500 check immediately and never returned to the Property. When Blais failed to return to do the work and failed to answer phone calls from Margis, Margis went to Blais's residence to hand deliver a demand letter. Blais was at home when Margis visited, and he confronted Margis with the words "what the 'f' are you doing at my house?" Blais then said "[i]f there is going to be a problem here, I have five cousins in the back, so . . . ." Eventually Margis sued Blais in small claims court and obtained a judgment by default in the amount of $7,219.09 and then an order to pay $100 each month to Margis. Blais defaulted on the payments and filed the petition commencing this chapter 7 case.

      Margis testified, without objection, to at least two other instances in which Blais took deposits from homeowners for drywall work and then failed to so much as start the work and to return the deposits. In each instance he was sued in small claims court, and in each instance a judgment entered against him. Although Blais testified that in each instance he worked out something with the homeowner, it is uncontroverted that each homeowner had brought suit against him and recovered a judgment.

      b.      **Alleged False Oaths in Schedules and SOFA**

In his bankruptcy case and immediately upon its commencement, Blais filed the required schedules and statement of financial affairs ("SOFA"), and he signed them under the pains and penalties of perjury. Margis maintains that, in them, Blais made false representations. Though his complaint did not identify any with particularity, in his proposed findings of fact, Margis now would have the Court find eleven.[2] I find that Blais tried the case without advance notice of the particular false oaths that Margis was alleging and would attempt to prove. Some, by educated guesses, Blais obviously anticipated. As to others, however, I cannot know whether Blais had fair notice. I will address each of the eleven alleged false representations in turn.

First, Margis would have the Court find that Blais failed to provide an address for his former spouse in his Schedule E, the schedule of priority claims. I find that Blais did not list his former spouse's address in his Schedule E, but also that Margis has failed to establish any reason why the former spouse's address should have been listed there at all. In any event, the omission of this address, without more, is just an omission, not a false statement.

Second, Margis would have the Court find that Blais failed to disclose in his schedule of personal property the counterclaim that he asserted in this adversary proceeding (and has since voluntarily dismissed). I find that Blais did not list the claim in question in his schedule of personal property. No such claim was pending at that time, and there is no evidence that Blais then believed that he had a claim to assert. I also find that, in view of the state court judgment that Margis obtained against Blais—the counterclaim would have been a compulsory counterclaim in that action but was not asserted—the counterclaim was invalid and worthless, a nullity. In truth, there was nothing to disclose and, consequently, its nondisclosure was no misrepresentation.

---

[2] In addition to these eleven, Margis apparently attempts (at paragraph 38 of his proposed findings of fact) to articulate one more, but the allegation is unintelligible.

Third, Margis would have the Court find that Blais failed to disclose an outstanding judgment that Margis himself characterizes as "probably worthless." I find that Blais did fail to disclose a judgment he held against an entity identified as Rosewood Padanaram LLC ("RP"), a Massachusetts limited liability company engaged in real estate development, for drywall work he had done. It is undisputed that RP has dissolved and that, though Blais held a judgment lien against real property belonging to RP, that lien was extinguished by a 2009 foreclosure on the property by a mortgagee whose lien was senior to Blais's. At the time of his bankruptcy filing, Blais understood correctly, and Margis does not dispute, that the balance owed him on the judgment had long been entirely uncollectible and therefore without value. At what point does an uncollectible judgment cease to be an asset that a debtor need disclose? I need not answer the question because I find that Blais's omission of this asset was not done with fraudulent intent. In Blais's mind this "asset" had long since passed into nothingness.

Fourth, Margis would have the Court find that Blais failed to disclose the taxpayer identification number for Hung Rite. Margis does not indicate whether and where this number should have been disclosed or why its non-disclosure amounts to a false representation. I find that Blais did omit the number from item 18(a) of the SOFA but also that its omission was just an omission, was not a false representation.

Fifth, Margis would have the Court find that Blais failed to disclose an action in Bristol County Probate Court. Margis does not identify the action in question, indicate where and whether this action should have been disclosed, or explain why its non-disclosure amounted to a false representation. Nor does he cite evidence in the record about this alleged non-disclosure, evidence that might help indicate what he is referring to. Because the action in question is not specified, the Court cannot make findings about it.

Sixth, Margis would have the Court find that Blais failed to list one creditor. Margis does not identify the person or entity in question. Nor has he submitted proposed findings about the facts

necessary to determine that the person or entity is a creditor, such that its omission amounts to a false statement. Again, the misrepresentation is so poorly specified that the Court cannot make findings about it.

Seventh, Margis would have the Court find that Blais failed to disclose contributions from Pamela Ventura on line 11 of Schedule I, the schedule of income. At line 11, the schedule instructs: "State all other regular contributions to the expenses you listed in Schedule J [the schedule of expenses]. Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives. Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J." In the language of this instruction, Ventura was, to Blais, both his "unmarried partner" and a member of his household. Blais answered "$0.00." In fact, when he filed this form, Blais was living in a rented house with Ventura, and she was contributing to the household expenses. In an amendment to Schedule I that Blais later filed, he quantified her contribution as $750 per month. I therefore find that Blais failed to disclose Ventura's contribution to expenses and that this amounted to a false representation. Blais testified credibly, and I find, that he had supplied this information to his attorney, that the attorney had omitted it from the completed form, and that he had failed to notice the omission when he reviewed this schedule and authorized its filing over his signature. The omission was not of such nature or magnitude as to affect his eligibility for relief under chapter 7 or anything else in this case. I find that the omission was not made knowingly: Blais knew of Ventura's contribution but not that his schedules omitted it. I further find that the omission was not made fraudulently. Blais acted without due care as to this detail but not with intent to conceal, deceive, or obtain unfair advantage.

Eighth, Margis would have the Court find that Blais failed to disclose contributions from his mother on line 11 of Schedule I, the schedule of income. It is true that Blais did not list a contribution

9

from his mother, but Margis cites no evidence, nor am I aware of any, that Blais's mother contributed to the household expenses. Margis has not sustained his burden of proving falsity.

Ninth, Margis would have the Court find that Blais failed to disclose that he was a director of a corporation owned by his mother. Though Margis does not say so expressly, this allegation concerns Blais's response to item 18(a) of his SOFA. In relevant part, item 18(a) instructed: "If the debtor is an individual, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was [a] . . . director . . . either full- or part-time within six years immediately preceding the commencement of this case[.]" The evidence shows that many years earlier, Blais's mother had designated her three children, including Blais, as directors of the corporation in question, of which she was then becoming sole shareholder. It is undisputed that she never informed her children that she had designated them as directors, that Blais did not learn until after he filed his SOFA that he had been designated a director, and that he never actually served as a director or received compensation from the corporation. Indeed there is no evidence that he ever accepted or even was offered the position of director. He did not list this directorship in his response to item 18(a). I find that the designation notwithstanding, Blais never agreed to be a director and therefore never was a director of the corporation, that the omission of this position was therefore not a false statement, and that, even if it were construed as false, he did not know the omission/statement to be false when he made it.

Tenth, Margis would have the Court find that Blais stated falsely, in his response to SOFA item 18(a), that Hung Rite ceased operations in 2008. I find that Blais did in fact state in his response to item 18(a) that the "ending date" for Hung Rite was 2008. The form does not define the term "ending date." Margis maintains that the true ending date was years later. Blais testified that he had largely abandoned that entity and that he had done little drywall work for several years before he undertook the Margis project. Hung Rite had last had employees in 2006. During the economic downturn beginning in 2005-

10

2006, Blais had so little drywall work that he took a full-time job doing weatherization work, which he held until 2013. From 2008 until 2012, he did drywall work only on weekends and only two or three times per year. It is not clear whether he did so under the name of Hung Rite or just in his individual capacity.  In 2014, he became disabled. The only reason that Hung Rite continued to have a yellow pages listing was that the yellow pages publication continued to list Hung Rite even though he had not renewed the listing. Margis adduced no evidence that Hung Rite had substantial assets or any net value. Indeed he has not established that Hung Rite was a separate, incorporated entity, anything more than the name under which Blais hired himself out. I find that Margis has not carried his burden of proving falsity, much less that any inaccuracy in the "ending date" was fraudulent in purpose, intended to deceive, mislead, or gain unfair advantage.

And eleventh, Margis would have the Court find that Blais failed to disclose on his schedule of personal property that he owned a Harley Davidson motorcycle. Blais has established that he did not own the motorcycle in question. Title to the motorcycle belonged to Pamela Ventura. It had belonged to her husband and passed to her upon his death. Blais has used the motorcycle only by her leave. He had no ownership interest in it, and therefore the omission was not a false statement.

**JURISDICTION**

The matters before the court are a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt and an objection to discharge under 11 U.S.C. § 727(a). These matters arise under the Bankruptcy Code and in a bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). They are core proceedings. 28 U.S.C. § 157(b)(2)(I) and (J) (core proceedings include determinations as to the dischargeability of particular debts and objections to discharge). This court accordingly has authority to enter final judgment as to both matters. 28 U.S.C. § 157(b)(1).

**ANALYSIS**

The party seeking to except a debt from discharge or to deny a debtor a discharge bears the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In furtherance of the Bankruptcy Code's "fresh start" policy, exceptions to discharge are narrowly construed. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). I now turn to the Code sections that Margis says require a determination that Blais should not receive a discharge or that his claim is excepted from discharge.

    **A.   11 U.S.C. § 727(a)(4)(A)**

Margis objects to Blais's discharge under § 727(a)(4)(A). That subsection states that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In the First Circuit, the leading case on the interpretation and application of § 727(a)(4)(A) is *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987). *Tully* articulates a two-part inquiry: "Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact." *Id*. at 110. The first of these parts includes several subparts. Therefore, without adding to or subtracting from *Tully's* formulation, the inquiry can be restated as whether (i) the debtor made an oath (ii) that was false and (iii) related to a material fact in the case (iv) knowingly and (v) fraudulently. See *Commonwealth of Massachusetts v. Bartel (In re Bartel)*, 2009 WL 2461727 at *5 (Bankr. D. Mass. 2009).

*Tully* makes clear that the burden of proof is on the party objecting to discharge. *Tully*, 818 F. 2d at 110 ("The burden of proof rests with the trustee."). The standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). *Tully* indicates, however, that "once it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense charged." *Tully*, 818 F. 2d at 110. I do not understand this language to shift the burden of proof, which remains always on the plaintiff. Nor does it nullify the

need to prove knowledge of falsity and fraudulent intent. *Robin Singh Educ. Servs. v. McCarthy (In re McCarthy)*, 488 B.R. 814, 826 (1st Cir. B.A.P. 2013) ("the existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made"). Rather, it establishes that a false oath may itself be sufficient to establish knowledge of falsity and fraudulent intent. *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974) ("the trier may infer fraudulent intent from an unexplained false statement"). More generally, fraudulent intent may be established by circumstantial evidence or inferred from a course of conduct. *In re McCarthy*, 488 B.R. at 826.

Reckless disregard for the truth has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A). *Id*. and cases cited; *Tully,* 818 F.2d at 112. The sheer volume of misstatements or omissions in a debtor's sworn bankruptcy filings may preclude a finding of excusable inadvertence and instead establish "the type of extreme carelessness or reckless indifference that equates to fraud and a bar to discharge." *Harrington v. Donahue (In re Donahue)*, 2011 WL 6737074 at *13 (B.A.P. 1st Cir. 2011) (citation and internal quotation mark omitted); see also *ABCD Holdings, LLC v. Hannon (In re Hannon)*, 512 B.R. 1, 18 (Bankr. D. Mass. 2014) ("the volume and repeated nature of the Debtor's omissions" made reckless indifference "the only plausible conclusion"); *Nickless v. Fontaine (In re Fontaine)*, 467 B.R. 267, 273 (Bankr. D. Mass. 2012) (debtor's cumulative omissions established his recklessness "beyond doubt"); cf. *Daniels v. Agin*, 736 F.3d 70, 85 (1st Cir. 2013) ("The amounts involved here render reckless errors that arguably may have been only negligent if they had concerned less significant items.").

*Tully* instructs that "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor." *Tully*, 818 F. 2d at 110. And it further insists that the reasons for denial of discharge "be real and substantial, not merely technical and conjectural." *Id*. *Tully* also articulates a countervailing consideration:

13

> On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, the successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Id.* (internal quotations and citations omitted).

As to each of the eleven alleged false oaths on which he has proceeded, Margis has failed to establish at least one of the five elements required by § 727(a)(4)(A). Regarding the first, Blais's "failure" to provide an address for his former spouse on the schedule of priority claims, Margis has failed to establish that this amounted to a statement or oath at all, false or otherwise. Regarding the second, Blais's failure to disclose a claim against Margis, the one he asserted as a counterclaim in this proceeding, I have found that Blais had no valid claim against Margis to disclose, and that the omission was therefore not a false statement. Regarding the third, Blais's omission of an outstanding judgment against RP from his schedule of personal property, I have found that the omission, if it amounted to a false statement, was not made with knowledge of falsity or intent to defraud. Regarding the fourth, Blais's failure to disclose the taxpayer identification number for Hung Rite, I have found that the omission was just an omission, not a representation, and therefore not an oath. Regarding the fifth, Blais's alleged failure to disclose an action in Bristol County Probate Court, I have found that Margis has failed to identify the action in question, indicate where and whether it should have been disclosed, or explain why its non-disclosure amounted to a false representation. This count is therefore not adjudicable. Regarding the sixth, Blais's failure to list a creditor, I have found that Margis has failed to identify the person or entity in question or the facts necessary to determine that the person or entity is a creditor, and therefore this count too is not adjudicable. Regarding the seventh, Blais's failure to

disclose contributions from Pamela Ventura on his schedule of income, I have found that this omission was a false oath, but also that the omission was not made with knowledge of falsity or intent to defraud. Regarding the eighth, Blais's omission of alleged contributions from his mother on his schedule of income at line 11, I have found that Margis has failed to establish that Blais's mother contributed to Blais's household expenses, and therefore he has not sustained his burden of proving falsity. Regarding the ninth, Blais's nondisclosure of his alleged directorship in his mother's corporation, I have found that the omission was not a false representation—Blais was *not* a director of the corporation—and that, in any event, he made the statement without knowledge of its alleged falsity. Regarding the tenth, Blais's alleged misstatement of the "ending date" of Hung Rite at item 18(a) of the SOFA, Margis has not proven falsity or that any inaccuracy in the ending date was made fraudulently. And regarding the eleventh, Blais's omission from his schedule of personal property of a motorcycle that Margis alleges he owned, I have found that Blais did not own the motorcycle and therefore that the omission was not a false oath. For these reasons, Margis's objections to Blais's discharge will be dismissed on their merits.

### B.   11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Margis contends that Blais obtained money from him by a false representation or, in the alternative, by actual fraud. In each instance, the gravamen of this count is that Blais made false promises to perform the services required by the drywall contract, first when he entered into the contract itself, to obtain the $2,000 payment, and twice later, to induce Margis to make two further payments on the contract notwithstanding that he (Blais) had done none of the promised work.

In order to establish that a debt is nondischargeable under § 523(a)(2)(A) due to a false representation, the plaintiff must prove each of the following elements by a preponderance of the

evidence: "1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; 2) the debtor intended to deceive; 3) the debtor intended to induce the creditor to rely upon the false statement; 4) the creditor actually relied upon the misrepresentation; 5) the creditor's reliance was justifiable; and 6) the reliance upon the false statement caused damage." *McCrory v. Spigel* (*In re Spigel*), 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci*, 121 F.3d at 786.

In the case of *Husky International Electronics, Inc. v. Ritz*, __ U.S. __, 136 S.Ct. 1581 (2016), the Supreme Court construed and clarified the phrase "actual fraud" in § 523(a)(2)(A). The Court rejected the idea that "actual fraud" can *only* be established where there is a misrepresentation. Other types of fraudulent acts can establish liability under § 523(a)(2)(A). Here, however, the alleged "actual fraud" consists entirely of false representations, the same conduct as Margis relies on to establish false representation. I therefore conclude that the actual fraud standard, if it applies here at all, does not require application of a looser or different test than that outlined in the preceding paragraph.

The first element of that test, making a knowingly false representation, refers to the conduct of the debtor and can include a debtor's promise to act, "[i]f, at the time he made his promise, the debtor did not *intend to perform*[.]"[3] *Palmacci*, 121 F.3d at 786-87. The second element, intent to deceive, refers to the Debtor's mental state and specifically requires a mental state embracing an intent to deceive, manipulate, or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976); *Palmacci*, 121 F.3d at 786-87. "Availability of direct evidence to prove a debtor's intent to deceive a creditor is unlikely to be obtained. The court may infer fraudulent intent from the totality of the circumstances*." Danvers Savings Bank v. Alexander (In re Alexander)*, 427 B.R. 183, 195 (Bankr D. Mass. 2010), citing *Palmacci*, 121 F.3d at 789.

---

[3] In *Palmacci* the First Circuit clarified: "If, at the time [the debtor] made a promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made." *Palmacci*, 121 F.3d at 786-87.

The final four elements embody the requirement that the creditor's claim arise directly from the debtor's fraud. *Faria v. Silva (In re Silva)*, 2014 WL 217889 at *5 (Bankr. D. Mass. 2014), citing *McCrory*, 260 F.3d at 32. As to the creditor's reliance, the Supreme Court of the United States has held that § 523(a)(2)(A) requires only justifiable reliance—a lower standard than reasonableness. *Field v. Mans,* 516 U.S. 59, 70 (1995). Reliance is justifiable if the falsity of the representation would not have been readily apparent to the person to whom it was made. *Id.* at 70-72. Under the justifiable reliance standard, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.*, quoting Restatement (Second) of Torts § 540. For purposes of determining whether reliance was justified, "the circumstances of the reliance claim must be taken into account," and "the individual is not obliged to investigate statements made to him (although he cannot shut his eyes to an obvious falsehood)." *Lentz v. Spadoni* (*In re Spadoni*), 316 F.3d 56, 59 (1st Cir. 2003).

The singular fact in this case is that although Blais was paid $3,500 of a $5,300 contract, despite repeated promises to start and simply to do the work for which his one-man business was hired, he did no more than apply five feet of tape in one small room off of the garage. There is ample evidence that Blais did not intend to perform at the time he entered the agreement with Margis. First, I have already found that Blais was not credible when he testified that he could not proceed with his work because Margis had not removed the existing tape. Again, even if I assume that Margis was required to remove the tape, Margis testified credibly, and I find, that all of the tape was removed months before Blais and he entered into their contract. Second, there is no evidence that the parties agreed that it was Margis's responsibility to remove the existing tape. It was not mentioned in the written agreement that Blais wrote. Third, each time that a payment became due under the agreement, Blais promised to get to work on the project in return for the payment, then went to the Property to collect each installment but never did get to the work. Plainly, Blais strung Margis along for weeks, knowing that Margis needed the

work done in order to proceed with the renovations. He knew Margis was vulnerable and took advantage of that situation. In addition, as to the issue of whether Blais made false statements to Margis, Blais's repeated promises that he would get to work if the next contract payment was made were untrue; the evidence shows when he made these promises, he had no intention of honoring them, only of using the promise to obtain further payment from Margis. Likewise, Blais's statement that he needed the money to pay his workers was untrue; he himself testified that by 2008, he no longer had employees. There was no evidence that Blais had any employees; none were mentioned in the agreement he wrote.

Based on the foregoing, I conclude that Blais made material misrepresentations to Margis when he entered into the drywall contract and thereby promised to do the work stated in the agreement, as well as when he promised to start or continue the work in return for each of two further payments. Blais made these false promises with intent to deceive Margis. Margis relied on these false promises by entering into the drywall contract, by making the initial payment of $2,000.00, and by making two further payments of $1,000.00 and $500.00. His reliance on these representations was justifiable, and he was injured when they turned out to be false. The judgment obtained by Margis is in its entirety for the injuries Margis sustained as a result of Blais's false promises to perform under the contract. For these reasons, I conclude that Blais's judgment debt to Margis consititutes a debt for money obtained by false representations and, as such, is excepted from discharge.

### C. 11 U.S.C. § 523(d)

In his answer and again at the close of his proposed findings and conclusions, Blais demanded attorney's fees under § 523(d). Fees under that subsection are available where "a creditor requests a determination of dischargeablility of a consumer debt under subsection (a)(2) of this section, and such debt is discharged[.]" 11 U.S.C. § 523(d).  Here the debt is not discharged but excepted from discharge. Therefore, § 523(d) does not apply, and no award of fees is appropriate.

18

**CONCLUSION**

For the reasons set forth above, the Court will enter a separate judgment dismissing Margis's objections to discharge on their merits but also declaring that Blais's judgment debt to Margis is excepted from discharge.

**Date:  February 15, 2017**         _____
Frank J. Bailey
United States Bankruptcy Judge